IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOISEASTERN DIVISION

| | |
|---|---|
| **Juan Soto,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No.: 19-CV-1308 |
| v. ) | |
| ) | |
| **Alejandro N. Mayorkas, Secretary,** ) | |
| **U.S. Department of Homeland Security,** ) | |
| **MARLENE BRUNSON, individually, and** ) | **Jury Trial Demanded** |
| **APRIL WALKER, individually,** ) | |
| ) | |
| **Defendants.** ) | |

# COMPLAINT

Plaintiff, Juan Soto, by his attorneys, Marc P. Trent of Trent Law Firm, P.C. hereby complain against Defendants Alejandro N. Mayorkas, Secretary, U.S. Department of Homeland Security ("DHS"), Marlene Brunson ("Brunson") individually, and April Walker ("Walker"), individually as follows:

## I.
## NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief and for damages against the defendants to enforce the Plaintiff's rights granted under the United States' Constitution pursuant to 42 U.S.C. § 1983 to be free of gender discrimination and sexual harassment in the workplace and for damages caused to him as a result of the intentional tortious conduct of and one or more of the individual Defendants. Plaintiff also seeks to redress the deprivation of the Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e et seq.)("Title VII"), and for state law causes of action.

## THE PARTIES

2. The Plaintiff, Juan Soto ("Soto"), was at all relevant times a resident of Cook County, Illinois.

3. In or about January 6, 2019, Plaintiff began employment with the Transportation Security Administration ("TSA") as a Transportation Security Officer ("TSO").

4. DHS is the U.S. federal executive department responsible for public security, with its headquarters located in Washington D.C.

5. TSA is an agency of DHS that is responsible for the security of the traveling public in the United States.

6. At all times relevant, DHS employed more than fifteen (15) employees and was Plaintiff's employer.

7. At all times relevant to the claims brought in this Complaint, Walker was the Lead Transportation Security Officer ("LTSO").

8. Walker was one of Plaintiff's supervisors or superiors.

9. Upon information and belief, Walker is a resident and citizen of Willowbrook, Illinois.

10. Walker is sued in her individual capacity.

11. At all times relevant to the claims brought in this Complaint, Brunson was the Transportation Security Manager ("TSM").

12. Brunson was one of Plaintiff's supervisors or superiors.

13. Upon information and belief, Brunson is a resident and citizen of Cook County, Illinois.

14. Brunson is sued in her individual capacity.

15. At all relevant times, Brunson and Walker operated under color of law.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action involves claims arising under federal law, including under the Constitution of the United States of America, enforceable through 42 U.S.C. § 1983 and under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.).

17. This Court has supplemental jurisdiction over Plaintiff's state-law causes of action pursuant to 28 U.S.C. § 1367 as they arise from the same core of operative facts as give rise to his federal law claims.

18. Venue is proper under 28 U.S.C § 1391(b)(1) and (d) because the Defendants DHS, Brunson, and Walker reside in this district, Defendant DHS has a principal place of business in this judicial district and all of the acts and occurrence that give rise to this lawsuit took place in this judicial district.

## BACKGROUND

19. Plaintiff complains about continuous sexual harassment and gender discrimination he experienced from, and retaliation he experienced, after he repeatedly complained beginning in or about 2019 and continuing to the present.

20. After having had partaken in two (2) separate social gatherings with Walker and other co-workers in September of 2019, Walker began to pursue Soto in a sexual manner.

21. Between the months of September and October of 2019, Walker would text Soto nude photos of herself, as well as ask him to come over to her residence to engage in sexual intercourse, adding that she was looking for a "friend with benefits."

22. Walker made numerous attempts to speak with Soto about said sexual advances, before, during, and after shift briefings, while working at O'Hare Airport T5 Baggage.

23. Soto advised Walker on numerous occasions, that he was involved in an on-off relationship with someone and that he was not looking for anything of a romantic nature with her.

24. Soto continuously asked Walker to stop with her sexual advances.

25. On October 18, 2019, while exiting the break room at T5, located near Turkish Airlines, Walker grabbed Soto's penis/crotch with her bare hand, outside of his clothing.

26. Walker then stated to Soto that she wanted him.

27. On October 19, 2019, while driving into the employee parking lot, Walker made an attempt to speak with Soto, since her text messages and phone calls had gone unanswered from the day before.

28. On October 19, 2019, after shift briefing, Walker followed Soto and two (2) other employees to the McDonald's located in the lower level of T5, attempting to speak with Soto about sexual/personal issues, which were denied by Soto. Soto related to Walker that he did not wish to speak with her about said topics.

29. On November 6, 2019, while working at T5/Odd Size, Soto was approached by Walker. Walker spoke with Soto about non-work related topics (food, business, etc), before stating to Soto that she knew that he was a busy man, but that she was simply looking for a "friend with benefits."

30. Walker added that all she wanted was to be "fucked."

31. When Soto advised her that he would not be talking to her about such topics, Walker called Soto an "asshole," before walking away from the zone.

32. Walker then returned back to the work zone, where Soto was working, and stated that she was sorry.

33. Walker again stated to Soto that she just wanted a "friend with benefits."

34. Soto again related to Walker that he would not be talking to her about said topics.

35. Soto then advised Walker to stop because she was (sexually) harassing him.

36. Walker then became upset and called Soto a "mother fucker," and walked away from the zone.

37. Soto then contacted his supervisor, Herman Mills ("Mills"), Security Transportation Security Officer ("STSO"), and asked him if anyone would be coming to help him in his work zone.

38. Walker then returned back to Soto's work zone for the third time.

39. Walker, who could not convince Soto to her sexual requests, related to Soto she was then going to tell people that he had raped her before leaving the work zone once again.

40. Soto then contacted Mills, asking to speak with him, reporting the harassment.

41. Mills then contacted and reported said claim to Deputy Federal Security Director ("DFSD") Louis Traverzo ("Traverzo").

42. Traverzo then contacted Terminal Manager ("TM") Joe Jurek ("Jurek").

43. Mills then met with Deputy Assistant Federal Security Director ("DAFSD") Darryl Wilson ("Wilson") and Transportation Security Manager ("TSM") Marlene Brunson ("Brunson") in her office and reported the claim of sexual harassment.

44. Soto was then called over to Brunson's office, explaining the ongoing harassment by Walker, to both Mills and Brunson.

45. Brunson advised Soto to keep his notes and evidence (text messages and photos), relating that someone would be talking to him within the next few days.

47. Brunson then advised Soto that he would no longer be working out of T5, stating that he was now being assigned to T2 for the remainder of the bid.

48. By doing so, Brunson violated Section F-1(b) of the TSA MD 1100.73-3 Handbook - Anti-Harassment Program which states that the alleged harasser is to be relocated to a different work site/location, pending the outcome of the inquiry and, therefore, instead of removing Walker,

Brunson moved Soto.

49. Brunson also violated Section E.3 of the same handbook, by not completing TSA Form 1173.1 for Soto. (Section E.3 states that the manager is to complete said form within three (3) business days of becoming aware of the allegation).

50. Further, Form 1173.1 was not completed by management until August 28, 2020, 296 days later, which was confirmed by the Anti-Harassment Coordinator of the National Resolution Center Emily Braxton ("Braxton").

51. Between December of 2019 and January of 2020, Soto asked Brunson and Transportation Security Manager ("TSM") Sarita Rivera ("Rivera") about his case in person and by email with no new information or interview.

52. On February 21,2020, Soto contacted and spoke with the Anti-Harassment Coordinator of the National Resolution Center Braxton for the first time about his case and Braxton responded that they had no record of any such incident.

53. Since Form 1173.1 was not completed by management until August 28, 2020, 296 days later, which was confirmed by the Anti-Harassment Coordinator of the National Resolution Center Braxton, management effectively did not report the incident(s).

54. On February 21, 2020, Mills approached Soto at Checkpoint 1 in T1, and related that Brunson wishes to see him in her office.

55. In Brunson's office, with Mills present, Brunson served Soto with a "no contact" form, which stated that Walker had made an allegation against him. The form was backdated and given a Reference # of 19-0171 which was listed before Soto's Reference #, as part of the cover up.

56. Soto signed said form in order to obtain a copy.

57. During said meeting in Brunson's office, Soto asked why he was being given this form, and asked as to why no one had spoken to him about his case.

58. Brunson related that she didn't know, but added that Walker had already been spoken to by Investigators.

59. Soto questioned Brunson as to how that could be, when no one had spoken to him since he was the victim.

60. Brunson then related that she had submitted his statement from the initial conversation she had with Soto and Mills in her office on November 6, 2019 and she said the statement was submitted on "hearsay" information.

61. Soto advised Brunson that she could not do that, adding that Brunson failed to report all that Walker had done to him.

62. Brunson then asked Soto to type out his statement.

63. Completing his statement, Brunson then asked Soto to email it to her before it was to be submitted.

64. While reviewing Soto's statement by her desk, Brunson copied the statement onto a word document, and began deleting witness names, witness telephone numbers, cameras positions, and other sentences from the statement.

65. Observing Brunson making said deletions, Soto advised Brunson that she could not do that.

66. Mills, who was still in the room, stood up and observed the deletions.

67. Mills then asked Soto to print out his statement, which they, Mills and Soto, both signed and dated before Soto was asked to go back to his work location.

68. On February 23, 2020, Soto emailed Federal Security Director ("FSD") Dereck Starks ("Starks"), and Wilson, to report management's failure to report the incident(s), along with the actions of Brunson on February 21, 2020, and the false allegation by Walker, referring to it as a "cover-up."

7

69. On February 24, 2020, Soto received an email from Starks, relating that Roberta Vickerman ("Vickerman"), would be assessing, advising, and/or enacting the next step.

70. On February 25, 2020, Soto spoke with Human Resource Specialist ("HRS") Robert Perry ("Perry"), and advised him of the "cover-up."

71. On February 27, 2020, Soto met with TSA Investigator Robert Lessnau ("Lessnau").

72. Prior to starting said interview with Lessnau, Soto was read warnings/rights, which were similar to Miranda Warnings.

73. At which time it was discovered that the investigation was for the false allegation made by Walker, and not for Soto's November 2019 claim.

74. During said interview, Soto provided all the information in regards to being sexual harassed by Walker, and the deletions of his statement made by Brunson, along with Romero, Perry, and Mills contact information.

75. In March of 2020, Mills met with investigators and provided a statement.

76. At which time, Mills also discovered that it was for Walker's allegation, and not Soto's.

77. On May 18, 2020, Soto received an email from Lessnau, stating that he had submitted his report for review, without having had spoken to Romero or Perry.

78. On May 27, 2020, Soto again spoke with Braxton, who still had no information in regards to his case.

79. On May 29, 2020, Soto received an email from Braxton, who related that she had been advised by TSA Investigators that the allegations had already been addressed when, in fact, Soto's allegations were never addressed.

80. On May 29, 2020, Soto filed a complaint against Walker and Brunson with the union.

81. On May 29, 2020, Soto and Union Vice-President, Christine Vitel ("Vitel") submitted said complaint to Perry.

82. On June 29, 2020, Soto and Vitel emailed Wilson, in order to address the complaint.

83. On June 29, 2020, Wilson emailed back, stating that he would be scheduling a meeting for a later date, which has yet to occur.

84. On August 9, 2020, Vitel and Soto emailed Perry, regarding the status of Soto's case, which Perry has never responded.

85. On August 28, 2020, Soto received an email from Braxton, advising that management had finally completed Incident Report Form 1173.1 (296 days/9 months later).

86. On September 24, 2020, Soto and Vitel contacted the Equal Employment Opportunity (EEO), and filed a complaint (HS - TSA - 02265 - 2020) with Jennifer Bailey ("Bailey").

87. On October 8, 2020, Soto was advised to go to T2 and meet with Rivera in her office.

88. Accompanied by Vitel to Rivera's office, Soto was asked to sign a closure form for Walker's allegation against him which cleared Soto of the allegation. Soto refused to sign the closure form, as witnessed by Vitel, since the false allegation made by Walker against Soto in the claim form would go into Soto's personnel file.

89. On October 9, 2020, Soto received a telephone call from Braxton, confirming the cover up by Brunson and Walker, by providing Soto with both case numbers (SOTO AHP Case # 20-0325, WALKER AHP Case # 20-0324).

90. In October 2020, Soto contacted the Whistleblower Office of Personnel Management ("OPM") of the Inspector General and filed a complaint.

91. In October 2020, two (2) days after filing a complaint with OPM, Soto was approached by Shareholders Manager Owen Winder ("Winder") at Checkpoint 1 in T1.

92. Soto advised Winder that he would not speak to him with without Vitel present.

93. With Vitel present, Winder advised that Walker's case was going to be reopened for further information.

94. Winder also advised that the agency had requested an extension for mediation.

95. Winder then proceeded to give his version of what he believed would be a reasonable outcome.

96. When Soto looked over at Vitel, in relation to what Winder was relating, Winder snapped his fingers in an intimidating manner in Soto's face, and stated to Soto to look at him.

97. On November 4, 2020, Soto received an email from Perry, with a copy of the closed investigation and new case for Walker for the same false allegation made against Soto in her prior case.

98. On November 6, 2020, Soto was advised to go to the Higgins Road location ("Higgins") and to meet with investigators.

99. Upon arriving at Higgins, Soto met with Lessnau, who stated that they had to "revisit" his statement from Walker's (closed) investigation.

100. Lessnau related that the TSA legal department ("TSA Legal") wanted a timeline despite Soto giving a video, verbal, and written statement to Lessnau on February 27, 2020.

101. Soto then asked Lessnau as to why he was being questioned on an investigation that was already closed, which according to Lessnau was closed in April of 2020.

102. Soto also questioned Lessnau as to why no one had spoken to him about his case/investigation against Walker since it was one (1) full year to the date.

103. Soto, along with Vitel, who was on the phone, agreed to speak with investigators, but asked to reschedule, in order for Soto to have his notes to which Lessnau agreed to.

104. On December 17, 2020, a mediation meeting was conducted, without resolution.

105. On December 17, 2020, Soto, along with Vitel, met with Lessnau and provided the before mentioned timeline that TSA Legal was requesting.

106. Soto again asked Lessnau as to when he would be spoken to in regards to his claim, to

which Lessnau related that both cases were "intertwined" and that they would be using his statement from Walker's investigation, thereby making it 407 days without anyone meeting with Soto about his claim.

107. On March 3, 2020, Walker retaliated against Soto by traveling to the DuPage County Sheriff's Office ("DCSO"), five (5) months after her case/investigation with DHS was closed, and filing a false police report of Criminal Sexual Assault which was essentially unfounded by DCSO.

108. Since filing said complaints against Walker, Soto has not been able to work and/or bid for a position at Terminal 2 or Terminal 5, for fear of retaliation from the Managers and Walker.

109. DHS and their management has failed to investigate and take proper remedial action regarding Walker. Despite Defendants' efforts to intimidate or discourage Plaintiff from complaining, Plaintiff complained about sexual harassment and discrimination on multiple occasions to numerous supervisors, including at least Defendant Brunson.

110. When Plaintiff complained to DHS Supervisors and HR, DHS failed to promptly remedy Plaintiff's complaints.

112. DHS have not promptly taken adequate remedial steps to ensure that the ongoing sexually harassing workplace environment cease.

113. Despite Plaintiff's complaints, Plaintiff has continued to endure a sexually harassing and hostile workplace environment

114. Plaintiff has suffered damages, including lost wages and emotional distress as a result of having to endure this offensive, unwanted workplace environment.

115. Plaintiff filed a timely charge of discrimination with the EEO.

116. Plaintiff received a Procedural Dismissal from the EEO. (Ex. A).

117. Plaintiff filed this lawsuit within 90 days of his receipt of his EEO.

Procedural Dismissal.

## COUNT I
### VIOLATION OF 1983-EQUAL PROTECTION (SEXUAL HARASSMENT)
(Against DHS and Walker, individually)

118. Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 of this Complaint and as and for this paragraph.

119. Plaintiff was at all relevant times a member of a protected class based upon his gender (male).

120. At all relevant times DHS had a custom, policy and/or practice to allow employees and supervisors to discriminate against and to sexually harass male employees.

121. Defendants and other employees sexually harassed Plaintiff and/or allowed it to occur.

122. During the course of his employment with DHS, Plaintiff has been forced to endure a working environment hostile toward men, including unwelcome or unwanted sexual advances, touching, groping, fondling, kissing, requests for sexual favors, sexual comments and gestures.

123. Walker has sexually harassed Plaintiff and subjected him to a hostile workplace environment, including but not limited to the ways described elsewhere in this Complaint, and in one or more of the following ways:

    a. making unwanted sexual advances;

    b. making comments of a sexual and offensive nature;

    c. touching Plaintiff in a sexual or offensive manner.

    d. physically groping, kissing or attempting to kiss and physically threatening Plaintiff.

124. The conduct which Plaintiff experienced was offensive and unwanted.

125. The sexual harassment about which Plaintiff complained was severe and pervasive.

126. Plaintiff complained about the widespread discriminatory and harassing conduct he faced at DHS.

127. Defendant, by and through its supervisors, human resources department and acquiesced, turned a blind eye, and did not effectively deter, investigate, prevent or take appropriate remedial action regarding the ongoing discrimination and harassment.

128. During Plaintiff's employment, Plaintiff met all of his employer's reasonable and legitimate work-related expectations.

129. All of the foregoing conduct on the part of Defendants was offensive to Plaintiff and would be offensive to any reasonable person.

130. Plaintiff complained to his supervisors and to Human Resources, but Plaintiff's complaints went unanswered.

131. The discriminatory and harassing behavior directed at Plaintiff was part of a custom, pattern and practice of unlawful harassment and discrimination against male employees at DHS.

132. Defendants' conduct violated Plaintiff's right to Equal Protection under the law, guaranteed by the Fourteenth Amendment to the Constitution of the United States.

133. As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

134. Plaintiff has suffered damages of an on-going and continuous nature.

## COUNT II
## VIOLATION OF TITLE VII-SEXUAL HARASSMENT
### (Against DHS)

135. Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-134 of this Complaint and as and for this paragraph, this claim is brought under Title VII, 42 U.S.C. § 2000e, *et seq*.

136. DHS constitutes an "employer" within the meaning of Title VII (42 U.S.C. § 2000e-(b)), based on its engagement in an industry affecting commerce and its employment of fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

137. Plaintiff was subjected to offensive requests for sex and sexual favors.

138. Plaintiff was subjected to a sexually harassing hostile workplace environment.

139. Plaintiff has complained about harassment, discrimination and the events described in his EEO Charge to managers, supervisors and Human Resources.

140. Defendant did not promptly remedy ongoing sexual harassment when Plaintiff complained.

141. Defendants permitted sexual harassment to continue and allowed the sexually harassing supervisors to retaliate against the Plaintiff after he complained.

142. As a result of the foregoing, Plaintiff has suffered damages.

## COUNT III
## VIOLATION OF 1983-EQUAL PROTECTOIN (GENDER DISCRIMINATION)
### (Against DHS, Brunson, individually, and Walker, individually)

143. Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-142 of this Complaint and as and for this paragraph.

144. Defendants' conduct violated Plaintiff's right to Equal Protection under the law, guaranteed by the Fourteenth Amendment to the Constitution of the United States.

145. The discriminatory and sexually harassing behavior directed at Plaintiff was part of a custom, pattern and practice of unlawful harassment and discrimination against male employees at DHS.

146. Similarly situated female employees have been treated more favorably than Plaintiff.

147. Female employees were not required to engage female supervisors in sexual or romantic activity to be considered eligible for a promotion to a full time position.

148. Plaintiff and other male employees have been subjected to discriminatory comments from supervisors and coworkers which have not been directed to female counterparts and which females are not required to endure as a condition of their employment.

149. Female supervisors and coworkers subjected Plaintiff to derogatory comments which are demeaning to men.

150. Brunson and Walker intentionally discriminated against Plaintiff based on his gender by giving more favorable treatment to female employees and by sexually harassing the Plaintiff.

151. Plaintiff has been treated differently than his female counterparts because he is male.

152. As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage of an on-going and continuous nature.

## COUNT IV
## VIOLATION OF TITLE VII-SEX DISCRIMINATION
### (Against DHS)

153. Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-152 of this Complaint and as and for this paragraph.

154. This claim is brought under Title VII, 42 U.S.C. § 2000e, *et seq*.

155. Plaintiff has been discriminated against in the workplace based on his gender, male.

156. The aforementioned conduct constitutes a violation of Title VII of the Civil Rights Act of 1964 based on gender discrimination.

157. As a result of the foregoing, Plaintiff has suffered damages.

## COUNT V
## VIOLATION OF 1983-RETALIATION
### (Against DHS, Brunson, individually, and Walker, individually)

158. Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-157 of this Complaint and as and for this paragraph.

159. Plaintiff complained about discriminatory sexually harassing treatment by Defendant Walker.

160. As a direct and proximate result of Plaintiff's complaining activities, the Defendants have taken materially adverse employment actions against the Plaintiff by:

    a. Denying the Plaintiff a promotion to which he previously had the opportunity to apply for;

    b.   Unfairly disciplining Plaintiff;

    c.   Explicitly informed Plaintiff his complaints were being ignored;

    d.   Reducing or removing some of Plaintiff's responsibilities;

161.   Defendants took materially adverse employment actions against the Plaintiff.

162.   The Plaintiff has been damaged as a result of the constitutional violations and deprivation of his right to Equal Protection and retaliated against for complaining about these violations.

### COUNT VI
### VIOLATION OF TITLE VII-RETALIATION
### (Against DHS)

163.   Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-162 of this Complaint and as and for this paragraph.

164.   When Plaintiff complained about sexual harassment and gender discrimination, he was threatened with retaliation and retaliated against, including but not limited to as set forth elsewhere in this Complaint and in Plaintiff's EEO Charge.

165.   As a result of this conduct, Plaintiff has suffered damages.

### COUNT VII
### COMMON LAW BATTERY
### (Against DHS, and Walker, individually)

166.   Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-165 of this Complaint and as and for this paragraph.

167.   Walker intentionally and offensively touched and battered Plaintiff.

168.   Defendant DHS was aware of intentional, offensive touching occurring by Walker toward the Plaintiff.

169. By failing and refusing to discipline employees who commit battery, assault or other intentional torts, DHS has expressly or tacitly condoned the commission of intentional torts in the workplace.

170. Intentional tortious conduct (assaults and batteries) were committed by management.

171. Instead of taking swift remedial action to stop ongoing batteries and assaults, DHS began investigating Plaintiff.

172. Plaintiff was subjected to harmful or offensive touching, including by Walker without his consent.

173. Defendant took no steps to prevent Plaintiff from suffering a battery.

174. The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

175. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

176. Plaintiff was subjected to a harmful or offensive touching, without his consent, by one or more of the Defendant DHS's supervisors and employees.

177. Defendant took no steps to prevent Plaintiff from suffering a battery.

178. Plaintiff was subjected to a harmful or offensive touching, without his consent, by one or more of the Defendant DHS's supervisors and employees.

179. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT VIII
## COMMON LAW ASSAULT
### (Against DHS, and Walker, individually)

180. Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-179 of this Complaint and as and for this paragraph.

181. The foregoing acts by DHS, and its supervisors and employee Walker were done intentionally.

182. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

183. Defendant DHS took no steps to prevent Plaintiff from being assaulted.

184. As a direct and proximate result of the Defendants' conduct, the Plaintiff was damaged.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendants on each of his respective claims, and:

   a. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the Plaintiff;

   b. Order that DHS implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

   c. Order that Plaintiff be promoted to a full-time position as he should have been provided with the opportunity to do so before complaining about sexual harassment, along with commensurate salary, raises, insurance and pension benefits associated with that promotion;

   d. Award the Plaintiff backpay, if appropriate;

   e. Award Plaintiff front pay, if appropriate;

   f. Award the Plaintiff actual damages;

   g. Award Plaintiff compensatory damages;

    h.  Award plaintiff punitive damages against Brunson and Walker in their individual capacities only;

    i.  Award Plaintiff attorneys' fees pursuant to 42 U.S.C. §1988, Title VII, and pursuant to any other applicable statute or law;

    j.  Award Plaintiff his reasonable costs associated with bringing his claims;

    k.  Award Plaintiff prejudgment interest on Defendants' damages award;

    l.  Award Plaintiff all other relief as the Court deems appropriate, equitable and just.

### PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,
Trent Law Firm, P.C.

Dated August 30, 2021

Marc P. Trent
(ARDC # 6324928)
Trent Law Firm, P.C.
350 S. Schmale Road
Suite 130
Carol Stream, Illinois
60188
(630) 682-3100

By:/s/ *Marc P. Trent* (electronic signature)

An Attorney for Plaintiff